**Docket No.: 3348D-0019**                                      **PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Sheikha Lateefah Fahed AlSalem AlSabah | : | First Named Inventor: |
| Inventor-owner, | : | Sheikha Lateefah Fahed AlSalem AlSabah |
| Appellant, | : | |
| | : | |
| v. | : | Application No.: 11/186,798 |
| | : | Filed: July 22, 2005 |
| Michelle K. Lee, Director of | : | |
| The United States Patent and Trademark | : | Group Art Unit: 3715 |
| Office | : | Examiner: Thai, Xuan Marian |
| Appellee | : | Confirmation No.: 6628 |

**ATTN:  Office of the Solicitor**

Mail Stop 8
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

### NOTICE OF APPEAL
#### (35 U.S.C. §142)

    **Sheikha Lateefah Fahed AlSalem AlSabah**, the Appellant and application inventor-owner, hereby gives notice of her appeal to the United States Court of Appeals for the Federal Circuit for review of the Decision on Appeal No. 2013-001551 for Application No. 11/186,798 of the Patent Trial and Appeal Board entered on February 1, 2016. The decision was received on February 1, 2016.

    The Decision on Request for Rehearing dated February 1, 2016, modifies the Decision on Appeal dated July 31, 2015. Each Decision is attached to this Notice.

    Simultaneously herewith the fee prescribed by Rule 52 of the rules of the Court of Appeals for the Federal Circuit is being transmitted to the Clerk of the Court in accordance with Federal Rule 15(a)(1).

**Application No. 11/186,798**          **Docket No. 3348D-0019**

To the extent necessary, a petition for an extension of time under 37 C.F.R. 1.136 is hereby made. Please charge any shortage in fees due in connection with the filing of this paper, including extension of time fees, to Deposit Account 07-1337, and please credit any excess fees to such deposit account.

Respectfully submitted,

HAUPTMAN HAM, LLP

DAVID E. DOUGHERTY
Registration No. 19,576

*Customer No. 22429*
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
Telephone: 703-684-1111
Facsimile: 703-518-5499

Date:    April 1, 2016

CC:       Court of Appeals for the Federal Circuit and
          Patent Trial and Appeal Board

Enclosures:   Decision on Request for Rehearing dated February 1, 2016 (7 pages); and
             Decision on Appeal dated July 31, 2015 (19 pages).

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2016, I served the foregoing Notice of Appeal, a copy of the Decision on Request for Rehearing dated February 1, 2016, and a copy of the Decision on Appeal dated July 31, 2015, by hand carry on the following:

Office of the General Counsel
United States Patent and Trademark Office
Madison Building East, Room 10B20
600 Dulany Street
Alexandria, Virginia 22313

By: _____
David E. Dougherty
Hauptman Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, VA  22314
Tel:  703-684-1111
Fax: 703-518-5499
Email:  ddougherty@ipfirm.com

*Counsel for Appellant*
*   Sheikha Lateefah Fahed AlSalem AlSabah*

# HAUPTMAN HAM, LLP

**PATENT**

Docket No.: **3348D-0019**          Application No.: **11/186,798**    Patent No.:

Date Filed: **July 22, 2005**          Appellant: **Sheikha Lateefah Fahed AlSalem AlSabah**

...........................................................................................

**The Stamp of the U.S. Patent & Trademark Office acknowledges receipt of the following:**

☐ Claim of Priority; and
☐ Certified Copy of Priority Document

☒ Other <u>Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit (2 Pages)</u>

   <u>Copy of Decision on Appeal dated July 31, 2015 (19 pages)</u>

   <u>Copy of Decision on Request for Rehearing dated February 1, 2016 (7 pages)</u>

☐ Check No. _____

☐ Credit card authorization form          Amount $ _____

Filed by: <u>**DED:drs**</u>          Date: <u>**April 1, 2016**</u>

TRADEMARK OFFICE
US PATENT AND

2016 APR - 1 PM 2: 54

OFFICE OF THE GENERAL COUNSEL

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/186,798 | 07/22/2005 | Sheikha Lateefah AlSalem AlSabah | 3348D-0019 | 6628 |

22429          7590          07/31/2015
LOWE HAUPTMAN & HAM, LLP
2318 Mill Road
Suite 1400
ALEXANDRIA, VA 22314

| EXAMINER |
|---|
| THAI, XUAN MARIAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3715 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/31/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

docketing@ipfirm.com
pair_lhhb@firsttofile.com
EAnastasio@IPFirm.com

US PATENT AND
TRADEMARK OFFICE

2016 APR -1  PM 2: 54

OFFICE OF THE GENERAL COUNSEL

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* SHEIKHA LATEEFAH FAHED ALSALEM ALSABAH

_____

Appeal 2013–001551
Application 11/186,798[1]
Technology Center 3700

_____

Before STEFAN STAICOVICI, THOMAS F. SMEGAL, and
JAMES J. MAYBERRY, Administrative *Patent Judges*.

SMEGAL, *Administrative Patent Judge*.


DECISION ON APPEAL


STATEMENT OF THE CASE

       Sheikha Lateefah Fahed AlSalem AlSabah (Appellant) seeks
our review under 35 U.S.C. § 134 of the Examiner's Final Rejection under
35 U.S.C. §103(a) of claims 2, 7, 8, 11, 17, and 22[2].   We have jurisdiction
under 35 U.S.C. § 6(b).


       We AFFIRM and enter a NEW GROUND OF REJECTION pursuant
to 37 C.F.R. § 41.50(b).

_____

[1] According to Appellants, the real party in interest is Sheikha Lateefa Fahed
AlSalem AlSabah.  Appeal Br. 4.
[2] Claims 1, 3–6, 9, 10, 12–16, 18–21, and 23–25 are canceled.

Appeal 2013–001551
Application 11/186,798

## CLAIMED SUBJECT MATTER

Claims 2, 11, 17, and 22 are independent claims. Claims 2 and 11, as reproduced below, illustrate the claimed subject matter.

2. A method for teaching Arabic to the blind comprising the steps of:

synopsizing 82 shapes representing 28 basic letters into 32 synopsized shapes;

consolidating the 32 synopsized shapes into 10 groups according to shape as shown in the following table in a first phase of the a program;

| Group. | Lateefa Groups |
|--------|----------------|
| 1ᵗ | ا |
| 2ⁿᵈ | بـ تـ ثـ يـ نـ تـ |
| 3ʳᵈ | جـ حـ خـ |
| 4ᵗʰ | د ذ |
| 5ᵗʰ | ر ز |
| 6ᵗʰ | سـ شـ |
| 7ᵗʰ | صـ ضـ طـ ظـ |
| 8ᵗʰ | عـ غـ فـ قـ |
| 9ᵗʰ | كـ |
| 10ᵗʰ | لـ مـ هـ ةـ و ىـ |

optimizing the letters proportionally to conform with spatial visualization for the blind;

printing said shapes with a raised format;

wherein the letters coming at the end of a word include a tail angle inclined to the left; and wherein the tail angle is embossed;

teaching an individual to recognize the above-identified 32 shapes in the 10 groups;

in a second phase of the program adding diacritical points to the shapes to distinguish each individual letter in a group;

2

Appeal 2013–001551
Application 11/186,798

      then when the individual is familiar with the above steps,
adding pronunciation and vocalization signs in a third phase of
the program; and
      adding curves to denote the start of a word.

      11. An Arabic teaching aid comprising a synopsized
alphabet wherein 82 shapes representing 28 basic letters are
synopsized into 32 synopsized shapes or synopsized letters
separated into 10 groups and in which the 10 groups of
synopsized shapes or synopsized letters are as follows:

| Group. | Lateefa Groups |
|---|---|
| 1st | ا |
| 2nd | ب ت ث ي ن ف |
| 3rd | ج ح خ |
| 4th | د ذ |
| 5th | ر ز |
| 6th | س ش |
| 7th | ص ض ط ظ |
| 8th | ع غ ف ق |
| 9th | ك |
| 10th | ل م ه ة و ى |

a substrate and wherein said synopsized shapes or synopsized
letters are printed as raised letters on said substrate and in
which the size of the synopsized shapes or synopsized letter
shapes are the same at the start, in the middle and the end of a
word or isolated and wherein the letters coming at the end of a
word include an embossed tail angle inclined to the left.

## REJECTIONS ON APPEAL

The following Examiner's rejections are before us for review.

    1. Claims 2, 7, 8, 11 and 22 are rejected under 35 U.S.C. § 101 as
directed to non–statutory subject matter.

3

Appeal 2013–001551
Application 11/186,798

2. Claims 2, 8, and 11 are rejected under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet (as evidenced by "Arabic alphabet –Wikipedia, the free encyclopedia," last visited July 31, 2008), Appellant's Admitted Prior Art ("AAPA"), and Chepaitis (US 2005/0106537 A1, pub. May 19, 2005).

3. Claim 7 is rejected under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet, AAPA, Chepaitis, and Abledata ("Fact Sheet on Manual Braille Writing Aids and Labelers").

4. Claims 17 and 22 are rejected under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet, Chepaitis, QWERTY (as evidenced by "QWERTY–Wikipedia, the free encyclopedia," last visited Mar. 24, 2011), the Microsoft Keyboard Layout Creator (MSKLC), and Aurora Systems ("Aurora is Your Special Needs Solution for Windows").

## ANALYSIS

*Non-statutory Subject Matter–Abstract idea*
*Claims 2, 7, 8, and 22*

The Examiner first analyzed the claims under the "machine-or-transformation test," which the Supreme Court has instructed is "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 130 S.Ct. 3218, 3227 (2010); *see* Final Act. 2–4. The Examiner determined that the claimed limitation of "[s]ynopsizing involves only mental steps that do not transform physical matter and thus is directed to an abstract idea, which is not patentable subject matter," and also that "the [additional claim] limitations directed towards printing and adding signs recite insufficient

4

Appeal 2013–001551
Application 11/186,798

involvement of the machine or transformation, as the main component of the claim (synopsizing) is directed towards an abstract idea." *Id.* at 4.

Appellant contends that to change 82 shapes i.e. Arabic Letters into 32 synopsized shapes, "is a physical transformation," that "adding an embossed tail angle to the left involves a physical transformation" and that "**printing with a raised format and an embossed tail angle involves a printer or a machine**. Thus the aforementioned steps are not mere mental steps." Appeal Br. 11. Appellant also asserts that "reducing the thickness of said shapes [as recited by claim 7] is evidence of a still **further physical transformation** as is embossing as set forth in claim 2." *Id.* at 12. Appellant continues by contending that "printing specific shapes with a raised format calls for a machine and/or physical transformation as does the act of printing," and that "**the claim**[s 2, 7, 8, and 22] **call[s] for a machine and a physical transition**." *Id.* at 12–13. However, we first note that our reviewing authority has admonished us that "[t]he mere manipulation or reorganization of data . . . does not satisfy the transformation prong." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).

More recently, the Supreme Court has set forth "a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1294 (2012). According to the Supreme Court's framework, we must first determine whether the claims at issue are directed to one of those concepts (i.e., laws of nature, natural phenomena, and abstract ideas). *Id.* If

5

Appeal 2013–001551
Application 11/186,798

so, we must secondly "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

Our reviewing court, relying on Supreme Court precedent, has "consistently 'refused to find processes patentable when they merely claimed a mental process standing alone and untied to another category of statutory subject matter[,] even when a practical application was claimed.'" *CyberSource,* 654 F.3d at 1372 (quoting *In re Comiskey,* 554 F.3d 967, 980 (Fed. Cir. 2009)). "Such a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *Id.* at 1373. Thus, in accordance with the first step in the Alice analysis we determine that claims 2, 7, 8, and 22 are directed to an abstract idea. More specifically, the steps of synopsizing, consolidating, optimizing, and teaching, as per claims 2, 7, and 8, and the step of synopsizing, as per claim 22, are capable of being done by a human being simply by observing and gathering data which falls in the general concept of a mental activity.

The Supreme Court characterizes the second step of the analysis as "a search for an 'inventive concept' i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* However, the Court in *Alice* notes that "'[s]imply appending conventional steps, specified at a high level of generality,' was not 'enough' [in *Mayo*] to supply an 'inventive concept.'" Alice, 134 S. Ct. at 2357 (quoting *Mayo,* 132 S. Ct. at 1300, 1297, 1294).

Appeal 2013–001551
Application 11/186,798

"The second step in the [Alice] analysis requires us to determine whether the claims do significantly more than simply describe that abstract method." *Ultramercial* at 5 (*citing Mayo* at 1297). Our reviewing court instructs us that "[w]e must examine the limitations of the claims to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into patent-eligible application. *Alice* at 2357 (quoting Mayo at 1298). The transformation of an abstract idea into patent-eligible subject matter "requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (*quoting Mayo* at 1294). Those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo* at 1298.

We find that claim 2 includes several conventional steps for teaching Arabic to the blind. These steps include *printing* the shapes in a raised format including a tail angle, and *adding* diacritical points, pronunciation, and vocalization signs, and curves. *See* Appeal Br. 22–23, Claims App. (emphasis added).

We also find that claim 22 includes the conventional step of printing as recited by claim 2, and additionally recites other conventional steps such as providing a computer, printer, software, and an audio output, and erasing a letter. While claim 22 recites providing what may be a novel "keyboard with 32 letter keys representing 82 Arabic shapes," neither the abstract idea (the synopsizing step and the pronouncing steps nor the other conventional process steps expressly involves using that keyboard. Like the claim at issue in *Ultramercial,* "[t]his ordered combination of steps recites an abstraction" as it has no particular concrete or tangible form. *Ultramercial, Inc. and*

Appeal 2013–001551
Application 11/186,798

*Ultramercial LLC v. Hulu , LLC and Wildtangent, Inc.,* 2014 WL 5904902,

4 (Fed. Cir. 2014). Thus, the Examiner correctly determines that

> [s]ynopsizing is merely summarizing the shapes into a smaller
> grouping which is an abstract idea. To meet the machine or
> transformation test the claim must particularly transform a
> particular article to a different state or thing. In Applicant's
> claim the synopsizing of an alphabet, the alphabet does not
> change state. It is in the same state before the synopsizing and
> after, i.e. it is an alphabet. Consequently, Applicant's claims
> offer no transformation as required by the machine or
> transformation test.

Ans. 4–5.

The Examiner also reasons that "[a]dding the embossed tail is not a

physical transformation as it does not transform an article to a different state

or thing as required by the machine or transformation test. It is still a tail

after the embossing." *Id.* at 5.

 The conventional steps recited by claims 2 and 22 do not transform

the abstract idea of teaching Arabic to the blind, or communicating in

Arabic, by the synopsizing step, because the claims simply instruct the

practitioner to implement the abstract idea with other routine, conventional

activities, which are insufficient to transform an abstract idea into patent-

eligible subject matter. *See Alice,* 134 S. Ct. at 2357–60.[3] Thus, we find

that the claimed conventional steps do not provide an "inventive concept"

sufficient to transform the recited method into patent-eligible subject matter.

*Bilski,* 130 S. Ct. at 3230-31.

---

[3] Appellant's reference to a "Further Declaration of Omar Al Bannai, PhD",
(at page 11 of the Appeal Brief) is unpersuasive of a physical
transformation.

Appeal 2013–001551
Application 11/186,798

For the foregoing reasons, we find Appellant's arguments unpersuasive. We agree with the Examiner that claims 2, 7, 8, and 22 are directed to non-statutory subject matter. Accordingly we sustain the rejection of these claims under 35 U.S.C. § 101 as being directed to non-statutory subject matter.

> *Non-statutory subject matter– printed matter*
> *Claim 11*

The Examiner states that claim 11 "recites a[n Arabic] teaching aid with a synopsized alphabet printed on a substrate" and cites to several early CCPA cases holding that a substrate "with letters merely printed on it . . . is non–statutory printed matter." Final Act. 5. See, for example, *Ex parte Gwinn*, 112 USPQ 439 (Bd. App. 1955), which supports the position taken by the Examiner that such an article is not a "new--manufacture" within the meaning of 35 U.S.C. §101, when the sole difference is in the meaning ascribed to the characters imprinted thereon.

Appellant first argues that claim 11 recites "a teaching aid as opposed to a method [as recited by claims 2, 7, 8, and 22] and includes far more than non–statutory printed matter." Appeal Br. 10. In particular, Appellant points out that "claim 11 calls for **each specific form of each of 32 synopsized forms and those 32 letters are separated into ten specific groups**," and that claim 11 "also calls for wherein said synopsized letters are printed as raised letters on a substrate," and "includes a limitation in which the size of the synopsized letters or shapes is the same at the start, in the middle and the end of a word or isolated." *Id.* at 13–14. Thus Appellant argues that it is the

9

Appeal 2013–001551
Application 11/186,798

content of the synopsized letters that is statutory subject matter under 35
U.S.C. § 101.

We are persuaded of error on the part of the Examiner, as we agree
with Appellant that the teaching aid recited by claim 11 is an article of
manufacture eligible for patent protection under 35 U.S.C. § 101. We
therefore do not sustain the Examiner's rejection of claim 11 under 35
U.S.C. § 101.

However, we are still of the view that claim 11 is directed to non-
statutory subject matter ineligible for protection under 35 U.S.C. § 101
because it is directed to abstract idea of an Arabic teaching aid. Much like
software placed on a computer disc, 82 synopsized shapes representing 28
basic letters, placed on a substrate, embodies the abstract idea of teaching
Arabic to the blind. *See Internet Patents Corp. v. Active Network, Inc.,* No.
2014-1048, 2015 WL 3852975, at *5 (Fed. Cir. June 23, 2015) (holding that
computer-readable storage medium, comprising computer instructions for
performing an abstract idea is ineligible subject matter). Thus we find
placing the teaching aid on a substrate to be insufficient to transform an
otherwise abstract idea into patent-eligible subject matter. *See* Bilski, 130 S.
Ct. at 3230-31.

For these reasons, and in accordance with our forgoing analysis
regarding claim 2, we agree with the Examiner that claim 11 is directed to
non-statutory subject matter. However, because our analysis differs from
the Examiner's, we designate our affirmance of the Examiner's rejection as
a new ground of rejection pursuant to 37 C.F.R. §41.50(b) to provide
Appellant with a fair opportunity to respond.

10

*Obviousness of claims 2, 8 and 11 over the Arabic Alphabet, AAPA, and Chepaitis; and of claim 7 over the Arabic Alphabet, AAPA, Chepaitis, and Abledata.*

*Claims 2, 7, and 8*

The Examiner finds the Arabic Alphabet discloses synopsizing 82 shapes of Arabic letters (representing 28 basic letters) that are consolidated into a plurality of groups according to distinguishing shapes and to which indicia is added. *See* Final Act. 6–7. Furthermore, the Examiner finds that "Chepaitis discloses optimizing an alphabet proportionally to conform with (sic) spatial visualization for the blind," and "printing raised, three-dimensional letters that are easily read by both the visually impaired and the fully sighted." *Id.* at 7. (citing Chepaitis at ¶¶ 14 and 22).

While acknowledging that "the Arabic Alphabet does not specifically disclose its usage in teaching to the blind," the Examiner finds that

> it would have been obvious to one of ordinary skill in the art at the time of the invention to substitute of one known element (using tactile fonts as taught by Chepaitis) for another (regular non-tactile fonts as taught by Arabic Alphabet) since the substitution of the fonts would have yielded predictable results, namely, a method that would allow Arabic to be readable to the blind.

*Id.* at 8.

The Examiner also acknowledges while the Arabic Alphabet "does not specifically disclose the specific number of groups," that AAPA "discloses that the shapes are traditionally grouped in to [sic] 12 groups according to shape." *Id.* However, the Examiner reasons that

> it would have been an obvious matter of design choice to a person of ordinary skill in the art to group the shapes described

11

Appeal 2013–001551
Application 11/186,798

> in Arabic Alphabet into 10 groups because the Applicant has
> not disclosed any objective evidence that the said grouping
> provides an advantage, is used for a particular purpose, or
> solves a stated problem. One of ordinary skill in the art would
> expect the Arabic alphabet to be equally effective in
> communication with either a grouping of 10 groups or a
> grouping of 12 groups. It would have been obvious to modify
> the grouping because such a modification would have been a
> mere design choice which fails to patentably distinguish over
> the prior art.

*Id.* at 8–9.

Appellant's arguments for patentability of claims 2, 7, and 8 can be
summarized by the assertion that because "it is far easier to memorize 32
shapes than to remember 82 shapes as shown in the Arabic alphabet," that
"[w]hat Applicant has done is to simplify learning Arabic for the blind by
reducing or minimizing the complexity of the language and providing a
teaching aid [a substrate] wherein 32 specific forms of letters are printed in
raised format to enable a blind person to easily learn the Arabic language."
Appeal Br. 16. However, Appellant offers no evidence to support such an
argument. We are instructed that "[a]ttorney's arguments in a brief cannot
take the place of evidence." *In re Pearson*, 494 F.2d 1399, 1405 (CCPA
1974) (citation omitted); *see also In re De Blauwe*, 736 F.2d 699, 705 (Fed.
Cir. 1984) (lawyer arguments and conclusory statements which are
unsupported by factual evidence are entitled to little probative value).

While acknowledging that "Chepaitis patent discloses a tactile code
comprising embossed alphabetic symbols representing the letters of the
conventional Roman alphabet and embossed numeral symbols representing
the conventional Arabic numerals," Appellant also contends that "there is
nothing in Chepaitis to suggest combining it with synopsized letters wherein

12

Appeal 2013–001551
Application 11/186,798

82 letters are replaced with 32 synopsized letters as presented in ten specific
groups of similarly shaped letters for facilitating teaching." *Id.* at 17.
However, the Examiner is correct in that "[o]ne of ordinary skill in the art
would expect the Arabic alphabet to be equally effective in communication
with either a grouping of 10 groups or a grouping of 12 groups." Final Act.
8–9. Appellants have not persuasively shown error in the Examiner's
findings. Moreover, claims 2, 7, and 8 merely require printing shapes with a
raised format, as disclosed by Chepaitis.

For the foregoing reasons, we sustain the Examiner's rejection of
method claims 2, 7, and 8 as unpatentable over the Arabic Alphabet, AAPA,
and Chepaitis.

### Claim 11

Regarding claim 11, the Examiner determines that

it would have been obvious to one of ordinary skill in the art at
the time the invention was made, applying the known technique
of printing with a raised formats as taught by Chepaitis
(Paragraph 22) to the teachings of the Arabic Alphabet as it
would have yielded predicable results and resulted in an
improved system, a system that would allow Arabic to be
readable to the blind.

Final Act. 12–13.

Appellant contends that the Arabic Alphabet, AAPA, and Chepaitis
"do not support a conclusion of obviousness because there is no suggestion
of synopsizing 82 shapes or letters into 32 specific shapes as set forth in
Applicant's claim 11," and "to consolidate the 32 specific shapes into ten
specific groups as [claimed]." Appeal Br. 16. However, the Examiner has
the better argument, reasoning that "Applicant has not shown that a

13

Appeal 2013–001551
Application 11/186,798

functional relationship exists between the printed matter and the paper on which it is printed on," and that "[t]he shapes and letters on the substrate are merely non-functional descriptive material." Answer 7. Moreover, Chepaitis discloses printing shapes with a raised format. *See* Chepaitis at ¶¶ 14 and 22.

Accordingly we sustain the Examiner's obviousness rejection of claim 11 over the Arabic Alphabet, AAPA, and Chepaitis.

*Obviousness of claims 17 and 22 over the Arabic Alphabet, Chepaitis, QWERTY, the Microsoft Keyboard Layout Creator (MSKLC), and Aurora Systems.*

*Claim 17*

Regarding claim 17, the Examiner finds that "Chepaitis discloses printing with raised letters (Paragraph 20)," and determines that

> [i]t would have been obvious to one of ordinary skill in the art at the time the invention was made, applying the known technique of mapping keyboard layout of a standard keyboard to the computer to include Arabic fonts (Arabic Alphabet) including a tail angle inclined to the left as taught by MSKLC to the teachings of Aurora for pronouncing letters, words and sentences and Chepaitis who teaches printing with raised letter, as it would have yielded predicable results and resulted in an improved system, as such an system would make the computer system user friendly to the blind.

Final Act. 15. The Examiner also points out that "Applicant appears to make no arguments with respect to the prior art rejection[s] for claim[s] 17." Answer 4.

In the Reply Brief at pages 15–16, Appellant contends for the first time that "claim 17 calls for a unique combination of elements wherein none

14

Appeal 2013–001551
Application 11/186,798

of the prior art disclose or suggest a keyboard having 32 'keys.'" However, Appellant did not present this argument in the Appeal Brief, and thus did not set forth these arguments prior to the Reply Brief to permit the Examiner an opportunity to fully respond. *See* 37 C.F.R. § 41.41(b)(2) (2014) ("Any argument raised in the reply brief which was not raised in the appeal brief, or is not responsive to an argument raised in the examiner's answer . . . will not be considered by the Board for purposes of the present appeal, unless good cause is shown.").

Thus we sustain the Examiner's rejection of claim 17 over the Arabic Alphabet, Chepaitis, QWERTY, the Microsoft Keyboard Layout Creator (MSKLC), and Aurora Systems.

### Claim 22

Regarding claim 22, the Examiner reasons that

> [i]t would have been obvious to one of ordinary skill in the art at the time the invention was made, applying the known technique of mapping keyboard layout of a standard keyboard to the computer to include Arabic fonts (Arabic Alphabet) as taught by MSKLC to the teachings of Aurora for pronouncing letters, words and sentences and [applying the known technique of] Chepaitis who teaches printing with raised letter, as it would have yielded predicable results and resulted in an improved system, as such an (sic) system would make the computer system user friendly to the blind.

Final Act. 15–16.

Again in the Reply Brief at page16, Appellant contends for the first time that "claim 22 is clearly distinguished over the cited art by the claim calling for synopsizing 82 Arabic shapes representing 28 basic letters into 32

Appeal 2013–001551
Application 11/186,798

shapes developing a message using the 32 shapes and printing the message using raised letters to be read by the blind or non-blind." Appellant did not present this argument in the Appeal Brief, and thus did not set forth this argument prior to the Reply Brief to permit the Examiner an opportunity to fully respond. *See* 37 C.F.R. § 41.41(b)(2) (2014)

For the reasons set forth above, we discern no error in any of the Examiner's findings. Thus, we sustain the Examiner's rejection of claim 22 over the Arabic Alphabet, Chepaitis, QWERTY, the Microsoft Keyboard Layout Creator (MSKLC), and Aurora Systems

DECISION

The rejection of claims 2, 7, 8, and 22 under 35 U.S.C. § 101 as directed to non–statutory subject matter is AFFIRMED.

The rejection of claim 11 under 35 U.S.C. § 101 as directed to non–statutory subject matter is AFFIRMED.

The rejection of claims 2, 8 and 11 under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet, AAPA, and Chepaitis is AFFIRMED.

The rejection of claim 7 is rejected under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet, AAPA, Chepaitis, and Abledata is AFFIRMED.

The rejection of claims 17 and 22 under 35 U.S.C. § 103(a) as unpatentable over the Arabic Alphabet, Chepaitis, QWERTY, the Microsoft Keyboard Layout Creator (MSKLC), and Aurora Systems is AFFIRMED.

16

Appeal 2013–001551
Application 11/186,798

For the reasons set forth above, pursuant to 37 C.F.R. § 41.50(b) we designate the decision to affirm the Examiner's rejection of claim 11 under § 101 to be a NEW GROUND OF REJECTION, because it contains a new rationale for affirmance.

Regarding the affirmed rejection(s) that have not been denominated as new grounds of rejection, 37 C.F.R. § 41.52(a)(1) provides that "Appellant may file a single request for rehearing within two months from the date of the original decision of the Board." In addition to affirming the Examiner's rejection(s) of one or more claims, this decision contains NEW GROUNDS OF REJECTION pursuant to 37 C.F.R. § 41.50(b). Section 41.50(b) provides "[a] new ground of rejection pursuant to this paragraph shall not be considered final for judicial review." Section 41.50(b) also provides that Appellant, WITHIN TWO MONTHS FROM THE DATE OF THE DECISION, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claims:

(1) *Reopen prosecution*. Submit an appropriate amendment of the claims so rejected or new evidence relating to the claims so rejected, or both, and have the matter reconsidered by the examiner, in which event the proceeding will be remanded to the examiner . . .

(2) *Request rehearing*. Request that the proceeding be reheard under § 41.52 by the Board upon the same record . . .

Should Appellant elect to prosecute further before the Examiner pursuant to 37 C.F.R. § 41.50(b)(1), in order to preserve the right to seek

17

Appeal 2013–001551
Application 11/186,798

review under 35 U.S.C. §§ 141 or 145 with respect to the affirmed rejection, the effective date of the affirmance is deferred until conclusion of the prosecution before the Examiner unless, as a mere incident to the limited prosecution, the affirmed rejection is overcome.

If Appellant elects prosecution before the Examiner and this does not result in allowance of the application, abandonment or a second appeal, this case should be returned to the Patent Trial and Appeal Board for Final Action on the affirmed rejection, including any timely request for rehearing thereof.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).  *See* 37 C.F.R. § 1.136(a)(1)(iv).

<u>AFFIRMED; 37 C.F.R. § 41.50(b).</u>

Ssc



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/186,798 | 07/22/2005 | Sheikha Lateefah AlSalem AlSabah | 3348D-0019 | 6628 |

22429          7590          02/01/2016
HAUPTMAN HAM, LLP
2318 Mill Road
Suite 1400
ALEXANDRIA, VA 22314

| EXAMINER |
|---|
| THAI, XUAN MARIAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3715 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/01/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

docketing@ipfirm.com
pair_lhhb@firsttofile.com
EAnastasio@IPFirm.com

US PATENT AND
TRADEMARK OFFICE

2016 APR -1 PM 2:54

OFFICE OF THE GENERAL COUNSEL

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

*Ex parte* SHEIKHA LATEEFAH ALSALEM ALSABAH

Appeal 2013-001551
Application 11/186, 798
Technology Center 3700

Before STEFAN STAICOVICI, THOMAS F. SMEGAL, and
JAMES J. MAYBERRY, Administrative *Patent Judges*.

SMEGAL, *Administrative Patent Judge*

DECISION ON REQUEST FOR REHEARING

Sheikha Lateefah Alsalem Alsabah (Appellant) filed a Request for
Rehearing under 37 C.F.R. § 41.52 (hereinafter "Req. Reh'g"), dated
September 30, 2015, of our decision (hereinafter "Decision") mailed July 31,
2015.  In the Decision, we affirmed the Examiner's rejection under 35
U.S.C. § 101 of claims 2, 7, 8, and 22 as directed to non-statutory subject
matter; and the Examiner's rejections under 35 U.S.C. § 103(a) [1] of claims
2, 8, and 11 as unpatentable over the Arabic Alphabet, AAPA, and
Chepaitis; [2] of claim 7 as unpatentable over the Arabic Alphabet, AAPA,
Chepaitis, and Abledata; and [3] of claims 17 and 22 as unpatentable over
the Arabic Alphabet, Chepaitis, QWERTY, MSKLC, and Aurora Systems.
We also affirmed the Examiner's rejection under 35 U.S.C. § 101 of claim
11 as directed to non-statutory subject matter, based on new rationale for

Appeal 2013-001551
Application 11/186,798

affirmance that we designated as a NEW GROUND OF REJECTION
pursuant to 37 C.F.R. § 41.50(b). Decision 10.

We have jurisdiction over the Request under 35 U.S.C. § 6(b). We do
not modify our decision.


## DECISION ON REQUEST FOR REHEARING

A request for rehearing "must state with particularity the points
believed to have been misapprehended or overlooked by the [Patent Trial
and Appeal Board ("Board")]." *See* 37 C.F.R. § 41.52(a)(1). In the Request
for Rehearing, Appellant argues that "[c]laim 11[recites] an article of
manufacture, and thus [is] eligible for patent protection under 35 U.S.C.
§ 101." (Req. Reh'g 2–9). Appellant also argues that the Board
"promulgated a new ground of rejection against [claims 2 and 22] under 35
U.S.C. § 101," because "[t]he Decision relies on the *Alice Corp. Pty Ltd. v.
CLS Bank Int'l* decision," which "was promulgated after this case was
forwarded to the Board." (Req. Reh'g 10–20).

### Claim 11

In our Decision, although we held that claim 11 recited a substrate
that was an article of manufacture, we further held that claim 11 was
"directed to non-statutory subject matter ineligible for protection under 35
U.S.C. § 101," because we determined "placing the teaching aid on a
substrate to be insufficient to transform an otherwise abstract idea into
patent-eligible subject matter." Decision 10 (citing *Bilski v. Kappos,* 130 S.
Ct. 3218, 3230–31 (2010)). We explained that our finding was "in
accordance with our forgoing analysis" of claim 2, where we sustained the

2

Appeal 2013-001551
Application 11/186,798

Examiner's rejection of the claim under 35 U.S.C. § 101 as directed to the abstract idea of teaching Arabic to the blind. *Id.* at 4–10. While not recited, we found that implicit in the teaching aid of claim 11, was the abstract idea of teaching Arabic to the blind.

Appellant first criticizes the Board for having likened an Arabic teaching aid comprising indicia on a substrate to a computer disc. Req. Reh'g 4–7. However, the Board's reliance on *Internet Patents Corp. v. Active Network, Inc.* was limited to the narrow proposition that an article of manufacture, such as a computer-readable storage medium, may be directed to unpatentable subject matter under 35 U.S.C. § 101 if that article of manufacture embodies an abstract idea and fails to add an inventive concept. *See* 790 F.3d. 1343, 1349 (Fed. Cir. 2015). As we found, claim 11 merely requires a substrate with raised letters printed thereon, wherein the letters embody an abstract idea, and thus the substrate acts as a mere carrier of the letters just as a computer disc acts as a carrier of software. While we do not dispute that Appellant's invention may have utility, we find that claim 11 lacks limitations that transform the abstract idea into patent-eligible subject matter.

Appellant also contends that an Arabic teaching aid, comprising a synopsized alphabet printed as raised letters on a substrate as recited by claim 11, is eligible subject matter. *See* Req. Reh'g 7–9. In particular, Appellant contends that the substrate recited by claim 11 "result[s] in tactile input that is transmitted to the brain . . . that ultimately results in the person learning to read." *Id.* at 8. However, this tactile nature of the teaching aid of claim 11 merely embodies the method of claim 2 — an abstract idea — of

3

Appeal 2013-001551
Application 11/186,798

teaching Arabic to the blind. Therefore, we conclude that Appellant has not shown that we should be persuaded by the arguments regarding claim 11.

### Claims 2 and 22

In our Decision, we sustained the Examiner's rejection of method claims 2 and 22, *inter alia,* under 35 U.S.C. § 101 as being directed to non-statutory subject matter. Decision 4–9. Appellant contends that, because our Decision relies on the *Alice Corp. Pty Ltd. v. CLS Bank Int'l* decision, we have promulgated a new ground of rejection under 35 U.S.C. § 101, which requires that Appellant "be afforded a right to rehearing in this regard." Req. Reh'g 10. However, Appellant fails to explain how our application of the *Alice* framework constitutes a new ground of rejection. "[T]he ultimate criterion of whether a rejection is considered 'new' in a decision by the [B]oard is whether [Appellant has] had fair opportunity to react to the thrust of the rejection." *In re Kronig,* 539 F.2d 1300, 1302–03 (CCPA 1976) (holding no new ground of rejection when the Board relied on the same statutory basis and the same reasoning advanced by the examiner). Our Decision merely applies the Examiner's findings to the *Alice* framework. *See* Decision 4, 8.

Appellant also advances several arguments in support of the patentability of claims 2 and 22 that were not raised in the Appeal Brief or Reply Brief. *See* Req. Reh'g 10–20. For example, Appellant contends that "Appellant has developed a useful apparat[u]s to alleviate human misery." *Id.* at 10. However, the Examiner's rejection is not based on whether the claims satisfy the requirements of 35 U.S.C. § 101 by being a useful

4

Appeal 2013-001551
Application 11/186,798

manufacture, but instead whether the recited method of using raised letters embodies an abstract idea that is not eligible subject matter.

Appellant also contends that claim 2 recites the step of consolidating the 32 synopsized shapes into 10 groups according to shape which "is the crux of the invention," because "[i]t is more than a trivial appendix to any abstract idea." Req. Reh'g 12. However, we find that organizing data in a different matter still results in data, and thus no transformation has occurred.

Appellant further contends that because claim 22 recites, *inter alia*, providing "*a keyboard with 32 letter keys*," that the "keyboard is *inherently* used in method claim 22." *Id.* at 19 (2d emphasis added). Alternatively, Appellant contends that "claim 22 *implicitly* utilizes the keyboard." *Id.* (emphasis added). However the Court in *Alice* noted that "'[s]imply appending conventional steps, specified at a high level of generality,' was not 'enough' [in *Mayo*] to supply an 'inventive concept.'" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2357 (2014) (quoting *Mayo Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1300, 1297, 1294 (2012)). Further, claim 22 fails to tie the keyboard to any other step of claim 22. The steps of claim 22 may be performed without use of the recited keyboard, such that its use in the claimed method is not inherent. To the extent that Appellant contends such a use is implicit in the claims (Req. Reh'g 18), Appellant has the opportunity, during prosecution, to amend the claims to make that use explicit.

Thus, even after considering those arguments, we are still bound by and have applied the framework as set forth by the Court in *Mayo* and reaffirmed by the Court in *Alice*, in determining that claims 2 and 22 are not directed to patent eligible subject matter.

5

Appeal 2013-001551
Application 11/186,798

Accordingly, Appellant's Request for Rehearing has not persuaded us that our Decision misapprehended or overlooked any points of law or fact in determining that claims 2, 11, and 22 are directed to non-statutory subject matter.

Insofar as we have addressed Appellant's arguments herein, Appellant's Request for Rehearing is granted. In all other respects, Appellant's Request for Rehearing is denied.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv).

<u>DENIED</u>

<u>cda</u>