No. 2016-1788

(Serial No. 11/186,798)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

In Re: SHEIKHA LATEEFAH ALSABAH,

*Appellant.*

---

Appeal from the United States Patent and Trademark Office,

Patent Trial and Appeal Board.

---

## REPLY BRIEF OF APPELLANT

---

David E. Dougherty

Sean A. Passino

Amir H. Behnia

Martin J. Cosenza, II

Hauptman Ham, LLP

2318 Mill Road, Suite 1400

Alexandria, Virginia 22314

Telephone:  703-535-7076

Fax:  703-518-5499

Email: ddougherty@ipfirm.com

*Attorneys for Appellant Sheikha Lateefah AlSabah*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Sheikha AlSabah certifies the following:

1.      Full Name of Party Represented by me is: Sheikha Lateefah Fahed

AlSalem AlSabah.

2.      Name of Real Party in interest represented by me is:

None other than the named party.

3.      Parent corporations and publicly held companies that own 10 % or

more of stock in the party:

None.

4.      The names of all law firms and the partners or associates that

appeared for the party or amicus now represented by me in the trial court or

agency or are expected to appear in this court (and who have not or will not

enter an appearance in this case) are:

David E. Dougherty
Sean A. Passino
Amir H. Behnia
Martin J. Cosenza, II
HAUPTMAN HAM, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314

The following individuals filed papers in the United States Patent and Trademark Office. Other than Mr. Dougherty, no one who filed a paper in the USPTO is expected to appear before this Court.

David E. Dougherty
Dennison, Schultz, Dougherty & MacDonald
1727 King Street, Suite 105
Alexandria, VA 22314-2700 [new Firm and address are below]

David E. Dougherty
Lowe Hauptman Ham & Berner, LLP
1700 Diagonal Road, Suite 300
Alexandria, VA 22314 [new Firm name and address are below]

David E. Dougherty
Lowe Hauptman & Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, VA 22314 [new Firm name is below]

David E. Dougherty
Hauptman Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, VA 22314 [current Firm name and address]

Respectfully submitted,

___/s/ David E. Dougherty_____          dated September 16, 2016

Hauptman Ham, LLP

2318 Mill Road, Suite 1400

Alexandria, Virginia 22314

Telephone:  703-535-7076

Fax:  703-518-5499

Email: ddougherty@ipfirm.com

*Attorney for Appellant Sheikha Lateefah AlSabah*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ ii

TABLE OF CONTENTS ......................................................................... v

TABLE OF AUTHORITIES ................................................................ viii

    I. Summary. .................................................................................... 1

II. All Claims are Not Abstract and are Patent Eligible, Because Each Claim Focuses on an "Embossed Tail Angle," Which Represents an Improvement Under Alice Step 1. ............................................................................. 5

II. Claim 11 is Patent Eligible. ............................................................. 6

    A. The Patent Office's New Facts and Rationales Should Not be Considered per Court Precedent. .................................................. 6

    B. A Structural Component of Claim 11 – *embossed tail angle inclined to the left* – Represents an Improvement – This is not Addressed in the Solicitor's Brief. ........................................................................... 9

    C. The Board Used an Impermissible *Per Se* Exception, but the Solicitor Without Explanation States that it is Not the Case. ............... 11

    D. There Is No Meaningful Analysis of Claim 11 per Stage 1 of *Alice*. ...... 11

        1. The statement "And, when the Board examined the claims, it found that the claims fail to recite any technological improvements" is not supported. ........................................................................... 12

2.  The statement "Sheikha AlSabah does not claim, for example, an improvement in the printing technology, paper, or ink used to make text accessible to the blind" is not supported. ....................................13

3.  The statement "Sheikha AlSabah claims an abstract theory – consolidating Arabic shapes into 10 groups – and instructs a practitioner to apply her theory to an unspecified surface" (Solicitor's Br. at 18.) is not supported. ...............................................13

E.  The Board Analogized Claim 11 to Software, the Solicitor's Brief Never States That This Analogy is Correct. Instead, the Solicitor's Brief cites Internet Patents, and provides a more extensive quote therefrom. ..........14

F.  Per *In re McDaniels*, the Rejection of Claim 11 Should be Reversed – Claim 11 was Treated the Same as Method Claim 2. .............................16

1.  Sheikha AlSabah argued that the rejection of claim 11 was improper in view of *McDaniel*, and the Solicitor did not assert the contrary. ...16

2.  The Solicitor's Brief clarifies the actions of the Board – thus making clear *McDaniel* applies. ......................................................16

IV. Claims 2 & 7-8 are eligible. .........................................................................17

V. Claims 2, 7-8, & 11 are patentable under Section 103...................................17

A.  With respect to claim 11, The Board Did Not Undertake the First Step Analysis of *Distefano*, and the Solicitor Does Not Assert the Contrary –

Instead, the Solicitor's Brief merely details what "the Board Must" do (as opposed to what the Board did), followed by new facts and rationales. ...........................................................................................17

B.  The Patent Office's new facts and rationales should not be considered..19

C.  The Solicitor's Conclusion is not Correct – How Can Letters Arranged Solely for Use By People Who Cannot Read Be "Claimed For Its Communicative Content"? .......................................................................20

   1.  Written Words are not used to communicate to someone who cannot read. ...............................................................................................20

   2.  Failure to address all features of claim 11 – "an embossed tail angle inclined to the left." ..........................................................................20

VI. The Statement of Related Case Improperly Compares Design and Utility Applications. ..........................................................................................22

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................22

CERTIFICATE OF SERVICE ................................................................................23

CERTIFICATE OF COMPLIANCE .......................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty Ltd. v. CLS Bank Int'l,*

    134 S. Ct. 2347 (2014)....................................................................5-11, 14-15

*Bilski v. Kappos,*

    130 S.Ct. 3218 (2010).................................................................................3, 7

*Distefano, In re,* 808 F.3d 845 (Fed. Cir. 2015) .....................................2, 4-5, 17-18

*Enfish, LLC v. Microsoft Corp.,*

    2016 U.S. App. LEXIS 8699; 118 U.S.P.Q.2D (BNA) 1684 (Fed. Cir. May

    12, 2016) ............................................................................................... 2-3, 7

*Imes, In re,* 778 F.3d 1250 (Fed. Cir. 2015) ............................................. 4, 9-10, 19

*Internet Patents Corp. v. Active Network, Inc.,*

    790 F.3d 1343 (Fed. Cir. 2015) .....................................................3, 7-8, 14-15

*McDaniel, In re,* 293 F.3d 1379 (Fed. Cir. 2002)........................................ 4, 16-17

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*

    2016 U.S. App. LEXIS 16703 (Fed. Cir. Sept. 13, 2016)...................... 2-3, 5

**Statutes**

35 U.S.C. §101 ..................................................................... 1, 3-5, 7-8, 10, 12-13, 17

35 U.S.C. §103 ............................................................................................. 1, 4-5, 17

# I. Summary.

This Court should reverse the Board decisions affirming rejections under 35 U.S.C. §101 (eligibility) and 35 U.S.C. §103, because Sheikha AlSabah's claims promote literacy and improve teaching of Arabic to the blind by practicing a unique *embossed tail angle inclined to the left* and set of synopsized letters and shapes—neither of which was ever used before, let alone being routine, conventional, or well-known activity, let further alone being taught or suggested in the prior art.

This case regards a complicated language, Arabic, which uses at least three different shapes for the same letter. (Appx65.) From this complicated language, there is the further complication that the subject audience cannot see the letters, but must feel the shapes.

The Arabic alphabet has 82 shapes representing 28 letters, because a given letter may be written in at least three distinct forms, depending on whether it stands alone or is the first, middle, or last letter of a word. (Appx63; 506.) The variation between the letter shapes for the exact same basic letter due to letter position within a word (beginning, middle, last) induces complication and distraction in learning the Arabic language, especially for a blind person who must feel the letter. Thus, from the 82 shapes, Sheikha AlSabah identified a unique synopsized set of 32 shapes that reduces the intricacies of the Arabic language for the blind.

(Appx75, Fig. 2, right hand column; Appx371, claim 11, table, right hand column; Appx 370, claim 2, table, right hand column.)

And, because the learner ultimately will be exposed to the variations of the letters indicating the end of the word, and also to make sure that the learner knows which letter of a word is the last letter of the word, Sheikha AlSabah created *an embossed tail angle*, which signifies the end of the word, regardless of the variant of the Arabic letter that would appear at the end of the word. (Appx65; Appx372, claim 11; Appx370, claim 2.) In centuries of teaching the Arabic language, neither her synopsized set nor her *embossed tail angle* was ever done before. This later feature is in every claim, yet this feature was nowhere addressed in the Solicitor's Brief vis-à-vis issues associated with improvement upon the art.

The Court should reverse the Board, for the reasons of record and in the context of three separate decisions that have been promulgated by this Court since the Board's decision: (1) *McRO, Inc. v. Bandai Namco Games America, Inc.*, No. 2015-1080, 2016 U.S. App. LEXIS 16703, (Fed. Cir. Sep. 13, 2016), (2) *Enfish, LLC v. Microsoft Corporation*, 2016 U.S. App. LEXIS 8699 (Fed. Cir. May 12, 2016), and (3) *In re Distefano*, 808 F.3d 845 (Fed. Cir. 2015).

For example, consistent with this Court's recent decision in *McRO*, the claims focus on the means to improve teaching Arabic to the blind—*an embossed tail angle inclined to the left*—in contrast to the Board's abstract idea of merely

teaching Arabic to the blind. (Appx23.) This is most eminently present in claim 11, which is an article that includes the embossed tail angle, yet the Board focused only on the article's intended use (to teach Arabic).

Claim 11 is not abstract, especially because the *embossed tail angle* was not a routine, conventional, or well-known activity, and especially because claim 11 is an article of manufacture claim. Thus, claim 11 is eligible subject matter under Section 101 for at least this reason. Moreover, the rejection lacks a meaningful analysis. The sum-total of the rejection of claim 11 by the Board is as follows:

> However, we are still of the view that claim 11 is directed to non-statutory subject matter ineligible for protection under 35 U.S.C. § 101 because it is directed to abstract idea of an Arabic teaching aid. ***Much like software placed on a computer disc, 82 synopsized shapes representing 28 basic letters, placed on a substrate, embodies the abstract idea of teaching Arabic to the blind****. See Internet Patents Corp. v. Active Network, Inc.,* No. 2014-1048, 2015 WL 3852975, at \*5 (Fed. Cir. June 23, 2015) …. Thus we find placing the teaching aid on a substrate to be insufficient to transform an otherwise abstract idea into patent-eligible subject matter. *See Bilski*, 130 S. Ct. at 3230-31.
> For these reasons, and in accordance with our forgoing analysis regarding claim 2, we agree with the Examiner that claim 11 is directed to non-statutory subject matter.

(Appx11, emphasis added.) See also, Request for Rehearing (Appx443-64).

From the above, it cannot be said that there is any meaningful analysis of the first filter of *Enfish*. A general reference by analogy to software, followed by a case citation without application to the case at hand (the Solicitor argues this is not

a **per se** rejection), and then an impermissible grouping with claim 11 (impermissible per *In re McDaniel* 293 F.3d 1379 (Fed. Cir. 2002), as detailed below) are all that was presented. Also, to the extent that the Solicitor's Brief attempts to remedy the above defects, *In re Imes*, 778 F. 3d 1250, 1253 (Fed. Cir. 2015) warrants reversal of the Board without consideration by this Court of the Patent Office's new facts and rationales.

The *Distefano* Court clarified that the first stage analysis vis-à-vis the printed matter doctrine under Section 103 must be a meaningful analysis. *Distefano*, 808 F.3d at 848-49. Yet, the Board viewed the first stage as being met by default (just as it did with respect to the first stage of Section 101). This is not surprising, as the rejections of claim 11 by the Board were promulgated without the assistance of *Distefano*. Indeed, in her Opening Brief, Sheikha AlSabah argued, and the Solicitor does not dispute, that it is clear that the Board jumped directly to the second stage–determining patentable weight vis-à-vis function, instead of providing a meaningful analysis of the first stage required by *Distefano* as to whether or not the limitations in question are printed matter in the first instance. *Cf. Distefano* at 848.

Also, with parallels to the above-noted new facts and rationales required to salvage any rejection under Section 101, there are clearly new grounds of rejection with respect to claim 11, identifiable almost with a mere visual inspection of the

text of the Solicitor's Brief. In contrast with the other rejections, when the Solicitor's Brief reaches the issue of the printed matter doctrine with respect to claim 11, and addresses *Distefano*, the tenor of the Brief changes from what the Board did to what the Board "must" do, with the applicable citations to *Distefano*. The Solicitor's Brief does not assert that the Board took any of these actions. Still, as detailed below, the new rationales in the Solicitor's Brief still do not satisfy *Distefano*.

With respect to all claims and the Section 103 rejections, just as is the case with respect to the Section 101 rejections, the claims are patentable. Neither the [*embossed*] *tail angle inclined to the left* nor the synopsized set was ever used before, let alone being taught or suggested in the prior art. And, no prior art teaches or suggests the *embossed tail angle inclined to the left*. Thus, claim 2 and its dependent claims 7-8 as well as claim 11 are patentable under Section 103.

## II. All Claims are Not Abstract and are Patent Eligible, Because Each Claim Focuses on an "Embossed Tail Angle," Which Represents an Improvement Under *Alice* Step 1.

"The specific, claimed features of [*the embossed tail angle inclined to the left*] allow for the improvement realized by the invention." *Cf. McRO,* 2016 U.S. App. LEXIS at *25. Under *Alice* step 1, courts must "look to whether the claims ... focus on a specific means or method that improves the relevant technology or are

instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." (*Id.* at *28.)

Here, article claim 11 and each of the method claims 2 and 7-8 recite the grammatical equivalent of an *embossed tail angle inclined to the left*. (Appx370, 372.) As detailed in the Opening Brief (AlSabah's Br. at 20-21) and above in the Summary Section, the *embossed tail angle* enables the learner, who is blind, to identify the end of a word regardless of the variant of the Arabic letter that would normally appear at the end of the word. This not only stays truer to characteristics of the Arabic language, but also–when coupled with Sheikha AlSabah's synopsized set–simplifies some of the intricacies of the Arabic language.

The Solicitor's Brief seems not to contest Sheikha AlSabah's position regarding the improvement related to the article's implementation of the synopsized set and *embossed tail angle inclined to the left*. (Solicitor's Br. at 20-22 and 24.) In fact, the Patent Office agrees that making Arabic accessible to the blind is a "laudable goal." (Solicitor's Br. at 11.)

## III. Claim 11 is Patent Eligible.

### A. The Patent Office's New Facts and Rationales Should Not be Considered per Court Precedent.

The Board did not undertake actions that it should have undertaken, and thus the Patent Office now raises new facts and rationales that are material to

determining the patentability of claim 11 under Section §101. Without Sheikha AlSabah's ability to fully respond to these new facts and rationales, Sheikha AlSabah is unfairly prejudiced.

As explained in Sheikha AlSabah's Opening Brief, the first stage of *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347 (2014) was not met (AlSabah's Br. at 14), and the Board did not provide meaningful analysis of the first stage, as required by *Enfish*, when asserting that claim 11 is analogous to software. (*Id.* at 15.) Now, in an effort to satisfy the first step, the Solicitor raised new facts and rationales never proffered by the Board. (E.g., Solicitor's Br. at 16-18.)

The discrepancy between the Solicitor's Brief and the Board's actions can be seen by again viewing the Brief and limited statements about claim 11 and Section 101 in the original decision:

> However, we are still of the view that claim 11 is directed to non-statutory subject matter ineligible for protection under 35 U.S.C. § 101 because it is directed to abstract idea of an Arabic teaching aid. Much like software placed on a computer disc, 82 synopsized shapes representing 28 basic letters, placed on a substrate, embodies the abstract idea of teaching Arabic to the blind. *See Internet Patents Corp. v. Active Network, Inc.,* No. 2014-1048, 2015 WL 3852975, at *5 (Fed. Cir. June 23, 2015) …. Thus we find placing the teaching aid on a substrate to be insufficient to transform an otherwise abstract idea into patent-eligible subject matter. *See Bilski*, 130 S. Ct. at 3230-31.

> For these reasons, and in accordance with our forgoing
> analysis regarding claim 2, we agree with the Examiner
> that claim 11 is directed to non-statutory subject matter.

(Appx11.) See also, Request for Rehearing (Appx443-64). The above provides the

sum-total of the Board's statements regarding claim 11 and Section 101. Thus, the

Board made a strained and unsupported analogy to software, and based on that, the

Board made its decision.

For *Alice* step 1, the Board asserted that claim 11 is analogous to software.

(Appx11.) All of the statements in the Solicitor's Brief following the citations and

quotes from *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed.

Cir. 2015) are new. (Solicitor's Br. at 16-18.) For example, the Solicitor stated that

"[r]equiring that the language be printed in a raised format on something as simple

as a piece of paper, at most, confines the idea to a particular technological

environment— a quite low technological environment." (Solicitor's Br. at 17.)

Further by example, the Solicitor stated that "Sheikha AlSabah does not claim, for

example, an improvement in the printing technology, paper, or ink." (Solicitor's Br.

at 17-18.) These statements represent assertions of facts unsupported by substantial

evidence as required, (AlSabah's Br. at 17), and are proffered as alternative

rationales to fulfil the first step of *Alice*.

To be clear, and paraphrasing the language of the Solicitor's Brief at page 17,

where did the Board evaluate any "particular technological environments"? Where

did the Board evaluate *the level* of any technological environments? Where did the

Board provide any evidence or rationale for what constitutes a low or high

technological environment? Where did the Board find that "the claims fail to recite

any technological improvements"? Where did the Board find that "Sheikha

AlSabah does not claim, for example, an improvement in the printing technology,

paper, or ink"? The Solicitor includes no citations to any statement in the Board's

opinions. These are new facts and rationales proffered to fulfil the first step of

*Alice*.

Following *In re Imes*, this Court should refuse to find facts in the first

instance and reverse the rejections without consideration of the Patent Office's new

facts and rationales.

## B. A Structural Component of Claim 11 – *embossed tail angle inclined to the left* – Represents an Improvement – This is not Addressed in the Solicitor's Brief.

The Solicitor's Brief emphasizes a lack of a technological improvement, but

did not evaluate the entire claim–the *embossed tail angle inclined to the left*.

(Appx372.) (Solicitor's Br. at 16-18.) As noted in Sheikha AlSabah's Opening

Brief, not only does claim 11 recite the Arabic letters but it also recites an

*embossed tail angle inclined to the left*. (AlSabah's Br. at 20.) The Board

oversimplified this structural component representing the improvement. In doing

so, the Board described the claims at such a high level of abstraction and untethered to the language of the claims that it ensured that the Section 101 exception would swallow the rule. *Cf. Alice*, 134 S.Ct at 2354.

Nowhere is this important feature of claim 11 addressed in the Solicitor's Brief.

To be clear, as argued by Sheikha AlSabah, not only does claim 11 recite the Arabic letters, but claim 11 also recites that there be an *embossed tail angle inclined to the left* (Appx372), the utilitarian value of which is described in Sheikha AlSabah's specification. (Appx65.) Why this is not a "technological improvement" is not explained. Indeed, nowhere is this feature addressed in the Solicitor's Brief, despite Sheikha AlSabah's explicitly pointing this out in her Opening Brief. (AlSabah's Br. at 20.)

Clearly, there is no support for the finding that the Board "found that the claims fail to recite any technological improvements." (Solicitor's Br. at 17.) As done in *In re Imes*, this Court should resist finding facts in the first instance and reverse the rejection without consideration of the Patent Office's new facts and rationales.

This error is material. As detailed above in the summary section, the *embossed tail angle* permits the blind to know when he or she is at the end of a word, and also reduces the total symbol count that he or she must initially learn by

eliminating the need for the unique symbols used at the end of the word.  This is an improvement.  In any event, this issue is an area where additional facts should be explored, if there is any question as to how this is a new improvement over the prior art.

**C. The Board Used an Impermissible *Per Se* Exception, but the Solicitor Without Explanation States that it is Not the Case.**

Sheikha AlSabah argued that by merely analogizing to software, the Board relied on what it perceived as a *per se* exception to skip immediately to step two of the *Alice* test.  (AlSabah's Br. at 21.)  The Solicitor asserted that the Board did not apply a *per se* exception, but never explained why this is the case.  (Solicitor's Br. at 17.)

With all due respect, the rejection was improperly predicated on this mere analogy.

**D. There Is No Meaningful Analysis of Claim 11 per Stage 1 of *Alice*.**

The Solicitor detailed the historical actions of the Board, but never truly embraces those actions.  (Solicitor's Br. at 17-18.)  Instead, after denying the application of a *per se* rule by the Board, the Solicitor provides new facts and rationales. (*Id.*) Sheikha AlSabah addresses each statement of the Answer as follows.

1. **The statement "And, when the Board examined the claims, it found that the claims fail to recite any technological improvements" is not supported.**

Nowhere did the Board make this finding. (*Cf.* Solicitor's Brief at 17.) The Board merely based its conclusion of unpatentability under Section 101 based on an analogy to software. (Solicitor's Br. at 16-17.) The Board nowhere states that claim 11 fails to recite any technical improvements.

Again, not only does claim 11 recite the Arabic letters, but claim 11 also recites that there be an *embossed tail angle inclined to the left* (Appx372), the utilitarian value of which is described in Sheikha AlSabah's specification. (Appx65.) Why this is not a "technological improvement," is not explained. Indeed, nowhere is this feature addressed in the Solicitor's Brief, despite Sheikha AlSabah squarely pointing this out in her Brief. (AlSabah's Brief at 20.)

There is no support for the finding that the Board "found that the claims fail to recite any technological improvements." The Board simply analogized the issue to software to dismiss this case.

2. **The statement "Sheikha AlSabah does not claim, for example, an improvement in the printing technology, paper, or ink used to make text accessible to the blind" is not supported.**

Assume *arguendo* that this were correct. The Solicitor does not explain why this would be determinative of a finding that claim 11 is directed to an abstract idea. This is a statement of fact without any application to why the result is that claim 11 is unpatentable under Section 101.

Also, as noted above, not only does claim 11 recite the Arabic letters, but claim 11 also recites that there be an *embossed tail angle inclined to the left* (Appx372), the utilitarian value of which is described in Sheikha AlSabah's specification. (Appx65.) This is nowhere addressed by the Solicitor. The Solicitor does not explain why this is not "a claimed improvement." If the Patent Office is to base its assertions of unpatentability on a lack of "improvements," it must analyze what is claimed, as opposed to what is not claimed.

3. **The statement "Sheikha AlSabah claims an abstract theory – consolidating Arabic shapes into 10 groups – and instructs a practitioner to apply her theory to an unspecified surface" (Solicitor's Br. at 18.) is not supported.**

Assuming *arguendo* that this is correct, there are other things that Sheikha AlSabah's claims recite, which are not considered in the Solicitor's Brief, such as:

> the size of the … shapes or . . . letter shapes are the same
> at the start, in the middle and the end of a word or
> isolated and wherein the letters coming at the end of a
> word include an embossed tail angle inclined to the left.

(Claim 11) (Appx371-72.) Nowhere does the Solicitor address these features. Thus, the statement is at best incomplete. It is not sufficient to establish that the Patent Office has satisfied the first filter of *Alice*.

### E. The Board Analogized Claim 11 to Software, the Solicitor's Brief Never States That This Analogy is Correct. Instead, the Solicitor's Brief cites *Internet Patents*, and provides a more extensive quote therefrom.

Sheikha AlSabah argued that by merely analogizing to software, the Board relied on what it perceived as a *per se* exception to skip immediately to step two of the *Alice* test. (AlSabah's Br. at 21.) The Solicitor asserted that the Board did not apply a *per se* rule (Solicitor's Br. at 17) (it does not say why – more on this below), but does not embrace the findings of the Board with regard to the software analogy and *Internet Patents*.

To be clear, Sheikha AlSabah has argued, since the Request for Rehearing stage, that the Patent Office has never applied any fact of *Internet Patents* to the fact at hand. For example, Section I.3.iv of the Request for Rehearing was captioned "The USPTO does not explain why the facts of *Internet Patents Corp.* apply to teaching aids." (Appx449.) The Solicitor quotes even more extensively

from *Internet Patents* than was done by the Board, but, like the Board, the Solicitor never explained why that case supports a finding that claim 11 is an abstract idea under the first stage of the *Alice* test. (Solicitor's Br. at 16-17.) Instead, the Solicitor simply recited quotes from *Internet Patents* and then concluded with an assertion that the recitation of a substrate is insufficient to transform the alleged abstract idea of teaching Arabic to the blind into something more. (Solicitor's Br. at 16-18.) To be clear, Sheikha AlSabah explicitly challenged the Board on this point. (AlSabah's Br. at 19-21.) Even at this late state, despite Sheikha AlSabah explicitly traversing this with the Board (Appx447), the Patent Office does not explain why *Internet Patents* controls the decision. Instead, the Solicitor's Brief contains extensive quotations from *Internet Patents*, but then moves on without any application to the holding in *Internet Patents* to the facts at hand. (Solicitor's Br. at 17.)

Because neither the Board's Decisions nor the Solicitor's Brief explained why *Internet Patents* controls, the assertions regarding the analogy to software and any definitive result associated with that case that is alleged to warrant upholding the rejections are insufficient to do so.

**F. Per *In re McDaniels*, the Rejection of Claim 11 Should be Reversed – Claim 11 was Treated the Same as Method Claim 2.**

**1. Sheikha AlSabah argued that the rejection of claim 11 was improper in view of *McDaniel*, and the Solicitor did not assert the contrary.**

Sheikha AlSabah specifically argued that it was improper for the Board to reject claim 11 on the basis that claim 11 merely embodied the method of claim 2. (AlSabah's Br. at 22.) Sheikha AlSabah explained that *In re McDaniel* does not permit the Board to ignore the distinctions between separate grounds of rejections. (AlSabah's Br. at 21-22.) The Solicitor nowhere comments on this.

**2. The Solicitor's Brief clarifies the actions of the Board – thus making clear *McDaniel* applies.**

The Examiner rejected claim 2 for one reason, and claim 11 for another reason. (AlSabah's Br. at 22.) The Board then issued a new grounds of rejection against claim 11–admitted by the Board. (Appx18.) This new grounds of rejection of claim 11 was based on the rationale to reject claim 2 (Appx11), plus a single sentence that claim 11 is like software. (Appx11.) That is squarely an action forbidden by *In re McDaniel* 293 F.3d at 1384. How cannot that be ignoring a separate grounds of rejection, and using claim 2 as representative of claim 11?

To be clear, the Solicitor's Brief states the following:. "The Board found the teaching aid, recited in claim 11, ineligible under section 101 for similar reasons [to claim 2] . . . . The Board incorporated the analysis it applied to claim 2 into its assessment of claim 11." (Solicitor's Br. at 16.) Yes, the Board also analogized claim 11 to software (AlSabah's Br. at 21) (and the Solicitor does not argue that that action was correct). However, there was no analysis whatsoever as to why claim 11 is analogous to software. Thus, the underlying rationale to reject claim 11 is, beyond a mere analogy, that of claim 2.

The Board's actions are barred by *In re McDaniel*.

## IV. Claims 2 & 7-8 are eligible.

Sheikha AlSabah maintains her reasons of record.

## V. Claims 2, 7-8, & 11 are patentable under Section 103.

Sheikha AlSabah maintains her reasons of record and replies as follows.

### A. With respect to claim 11, The Board Did Not Undertake the First Step Analysis of *Distefano*, and the Solicitor Does Not Assert the Contrary – Instead, the Solicitor's Brief merely details what "the Board Must" do (as opposed to what the Board did), followed by new facts and rationales.

Sheikha AlSabah, in her Opening Brief, argued that *Distefano* holds that "Only if the limitation in question is determined to be printed matter does one turn

to the question of whether the printed matter nevertheless should be given patentable weight." *Distefano*, 808 F.3d 845 at 850-51." Sheikha AlSabah also argued that, and the Solicitor does not dispute, it is clear that the Board jumped directly to the second stage–determining patentable weight vis-à-vis function, instead of providing a meaningful analysis of the first stage of the printed matter doctrine, which is whether or not the limitations in question are printed matter in the first instance. (AlSabah's Br. at 35-36.)

To be clear, for most of the Solicitor's Brief, the Patent Office refers to affirmative actions taken by the Board.

Yet, when reaching the section regarding the printed matter doctrine (section 4 of the Argument of the Solicitor's Brief), in asserting that claim 11 is obvious, the Patent Office nowhere alleged any affirmative action by "the Board." Indeed, other than the conclusion that the Board was correct, the language notably changes to what "***the Board must***" do. (Solicitor's Br. at 23-24.)

After reciting five actions that the Board "must" do, the words "the Board" are nowhere articulated. This is because the Board did not do any of these "musts."

Because the Board did not take actions that it should have taken, and because without these actions a *prima facie* case of obviousness cannot be established under *Distefano*, the Board's Decisions should be reversed.

**B. The Patent Office's new facts and rationales should not be considered.**

The Patent Office's arguments on page 24 of the Solicitor's Brief proffer new facts and rationales neither articulated by the Board nor supported by substantial evidence. As relevant here, the Solicitor's Brief states the following:

> Both steps of the printed-matter inquiry compel the conclusion that Sheikha AlSabah's claim to synopsizing shapes and consolidating them into 10 groups is entitled to no patentable weight. ***At the first step, the concept of synopsizing and consolidating into 10 groups is claimed for its communicative content.*** As discussed above, in the patent-eligibility analysis, the concept of synopsizing shapes and consolidating them in 10 groups is a linguistic theory. A person can synopsize shapes and consolidate them into groups into his or her mind. Indeed, a person who synopsizes and consolidates shapes does so to communicate in the Arabic language.

(Solicitor's Brief at 24) (Emphasis added.) These assertions are proffered as new facts and rationales to support a rejection.

As done in *In re Imes*, this Court should refuse to determine facts in the first instance and reverse the rejections without consideration of the Patent Office's new facts and rationales.

## C. The Solicitor's Conclusion is not Correct – How Can Letters Arranged Solely for Use By People Who Cannot Read Be "Claimed For Its Communicative Content"?

### 1. Written Words are not used to communicate to someone who cannot read.

The Solicitor's Brief asserts that the letters of claim 11 are arranged for their communicative content. (Solicitor's Br. at 23.) The point of contention with this assertion can be seen by asking a simple question: does the claim recite synopsizing and consolidating the shapes *to communicate, or to teach people how to be able to communicate*?

To be clear, the teaching aid or article of claim 11 is developed to be used by a person who cannot read the word(s) on the substrate, because that person is blind and cannot read. If the person could sight read the words, that person would not need satisfaction of the intended purpose of the article of claim 11.

### 2. Failure to address all features of claim 11 – "an embossed tail angle inclined to the left."

As noted in Sheikha AlSabah's Opening Brief, claim 11 recites "the size of the synopsized shapes or synopsized letter shapes are the same at the start, in the middle and the end of a word or isolated and *wherein the letters coming at the end of a word include an embossed tail angle inclined to the left*." (Appx371-72)

(AlSabah's Br. at 20.) These features are addressed nowhere in the Solicitor's Brief. That is, Sheikha AlSabah has created a modification to the letters – the embossed tail angle inclined to the left - beyond any communicative content of the word. This is provided so that the user can determine the end of the word, regardless of the variant of the letter that would normally be used.

Nowhere is this feature addressed with respect to the assertions of obviousness vis-à-vis the printed matter doctrine.

This is not addressed by the Solicitor's assertion that a "person can synopsize shapes and consolidate them into groups in his or her mind." (Solicitor's Br. at 24.) This is not addressed by the assertion that "a person who synopsizes and consolidates shapes does so to communicate." (Solicitor's Br. at 24.) Simply put, the Solicitor addresses only a portion of what Sheikha AlSabah's claims recite.

The feature of an "embossed tail angle inclined to the left" is a material feature to the claims. It is recited in claim 11 (Appx371-72). This is not present for the communicative content of the word, but to aid the user in learning when a word ends. This fact makes clear that based on the record, claim 11 has features that are not claimed for their communicative purposes.

## VI. The Statement of Related Case Improperly Compares Design and Utility Applications.

The Solicitor's Brief cites a previous design patent application, the rejection of which was affirmed by this Court. (Solicitor's Br. at iv.) Design claims are interpreted differently from utility claims, and a comparison of similarities seems to suggest a misunderstanding.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons stated herein and those in Sheikha AlSabah's opening Brief, the Board's decision affirming the each of the examiner's rejections of claims 2, 7, 8, and 11 should be reversed in whole, and the case should be remanded for further proceedings consistent with this Decision.

Respectfully submitted,

   /s/ David E. Dougherty            dated September 16, 2016

David E. Dougherty
Sean A. Passino
Amir H. Behnia
Martin J. Cosenza, II
Hauptman Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
Telephone: 703-535-7076; Fax: 703-518-5499
Email: ddougherty@ipfirm.com
*Attorneys for Appellant Sheikha Lateefah AlSabah*

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on September 16, 2016, by:

Electronic Means (by E-mail or CM/ECF)

Nathan K. Kelley, Solicitor
Thomas W. Krause, Deputy Solicitor
Benjamin T. Hickman, Associate Solicitor
Monica B. Lateef, Associate Solicitor
Tasha Gibbs
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450

By:  /s/ David E. Dougherty

David E. Dougherty
Sean A. Passino
Amir H. Behnia
Martin J. Cosenza, II
Hauptman Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
Telephone:  703-535-7076
Fax:  703-518-5499
Email: ddougherty@ipfirm.com

*Counsel for Appellant Sheikha Lateefah AlSabah*

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

This brief contains 5,016 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ David E. Dougherty

David E. Dougherty
Hauptman Ham, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
Telephone:  703-535-7076
Fax:  703-518-5499
Email: ddougherty@ipfirm.com

*Attorneys for Appellant Sheikha Lateefah AlSabah*